```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
  360 MORTGAGE GROUP, LLC,                    :
                                              :
                                  Plaintiff,  :
                                              :     19 Civ. 8760 (LGS)
                     -against-                :
                                              :          ORDER
  FORTRESS INVESTMENT GROUP LLC,              :
                                              :
                                  Defendant.  :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

WHEREAS, the Opinion and Order dated March 30, 2022 (the "Opinion") denied Defendant's motion for summary judgment.

WHEREAS, familiarity with the Opinion is assumed.

WHEREAS, the Opinion invited the parties to submit supplemental briefing regarding the potential application and scope of the *Noerr-Pennington* doctrine.

WHEREAS, by Order dated March 30, 2022, the parties were directed to file separate letters stating why the First Amended Complaint ("FAC") should not be amended to reinstate a cause of action for tortious interference with existing business relations. The parties filed simultaneous letters on July 15, 2022.

WHEREAS, on June 13, 2022, Defendant filed a motion for reconsideration of the Opinion, and on July 6, 2022, Plaintiff filed an opposition.

WHEREAS, on August 12, 2022, the parties filed simultaneous supplemental briefing regarding the *Noerr-Pennington* doctrine.

WHEREAS, on August 26, 2022, the parties filed simultaneous replies regarding the *Noerr-Pennington* doctrine.

WHEREAS, this Order addresses (i) Defendant's motion for reconsideration; (ii) the parties' supplemental briefing regarding the *Noerr-Pennington* doctrine and (iii) Plaintiff's motion for leave to amend the FAC to reinstate a cause of action for tortious interference with existing business relations.

**Motion for Reconsideration**

WHEREAS, "[a] party may move for reconsideration and obtain relief only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (internal quotation marks omitted). The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Cho*, 991 F.3d at 170 (internal citation omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *accord Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2021 WL 3406192, at *11 (S.D.N.Y. Aug. 4, 2021). "It is black letter law that a motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court . . . ." *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Pro. Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (summary order) (internal quotation marks omitted); *see also Tonga Partners*, 684 F.3d at 52.

WHEREAS, Defendant does not identify any change of controlling law, any new evidence or the need to correct a clear error or prevent injustice.

WHEREAS, Defendant argues that it was entitled to summary judgment under the *Noerr-Pennington* doctrine because there is no genuine issue of material fact concerning the alleged bribery of GNMA's former President, Michael Bright.  As the Opinion explained, Bright was involved in the termination of Plaintiff's license and left GNMA shortly after the termination and became the CEO of the Structured Finance Association ("SFA"), a lobby group of which Defendant is a large contributor.  Defendant argues that government officials routinely accept positions with lobbying firms and that this fact alone cannot give rise to a plausible inference of bribery.  As the Opinion explained, this inference can reasonably be drawn when viewing the record as a whole, in the light most favorable to Plaintiff, including the content and timing of Defendant's alleged threats, Bright's apparent role in the termination decision, the timing of his departure and the extraordinary nature of GNMA's actions under the circumstances.  Collectively, this evidence creates a plausible inference by which a reasonable jury could infer an improper quid pro quo.  The fact that such employment practices may be common in the lobbying industry would not necessarily preclude a reasonable juror from coming to the opposite conclusion when viewing the evidence as a whole.

WHEREAS, Defendant's contention that the Court relied on inadmissible evidence in finding that Defendant was a large contributor to SFA is without merit.  Michael Nierenberg's declaration is not the only evidence in the record establishing this fact.  Two other individuals testified that Defendant "is a large contributor" and "major donor" to SFA.  Defendant argues that Mark Greco's statement is inadmissible because he did not have personal knowledge of that fact.  While the basis of Greco's knowledge is not clearly stated, Defendant's arguments do not change the fact that there is sufficient, circumstantial evidence from which a reasonable juror could infer potential bribery.  Defendant relies on the declaration of NRZ's CEO, which

acknowledges Bright's subsequent employment with the SFA, and, relying on the SFA's member page on its website, states that Defendant is one of many member institutions.  Plaintiff relies on the same portion of the SFA's website to argue that Defendant's potential influence over the SFA is substantial as it is one of four founding members in the "Investor" category.  *See* Structured Finance Association, *Our Members*, https://structuredfinance.org/members/ (last visited Sept. 2, 2022).  Defendant has not argued that the information on the website is untrustworthy or inaccurate.  Even if Defendant had not waived any hearsay objection by relying on this statement in its memorandum of law and the NRZ CEO's declaration, *see, e.g.*, *Grant v. City of New York*, No. 15 Civ. 3635, 2019 WL 1099945, at *1 n.2 (E.D.N.Y. Mar. 8, 2019) (concluding that any hearsay argument is waived because both sides relied heavily on the statements), this information is also admissible under the "catchall" hearsay exception.  Fed. R. Evid. 807.  The statements are supported by sufficient guarantees of trustworthiness as they were made by the SFA and concern the SFA's investors, and are therefore more probative than any other evidence offered by the parties.  As to the factual basis for Bright's subsequent employment, the parties do not dispute this fact.  This fact is clearly established in the record through Greco's and WeissMalik's testimony and NRZ's CEO's declaration.

WHEREAS, Defendant argues that the Court erred in its tortious interference ruling by improperly shifting the evidentiary burden from Plaintiff to Defendant with respect to "gaps" in the record.  Defendant misinterprets the Opinion.  The Court did not hold the absence of evidence against Defendant, nor conclude that the absence of certain evidence creates a triable issue of fact regarding causation.  The Opinion concluded that, viewing the record as a whole, the evidence was sufficient for a reasonable jury to conclude that, but for Defendant's conduct, GNMA would not have terminated Plaintiff's license.  This evidence included explicit threats

Defendant allegedly made to Plaintiff implying that Defendant would use its relationship with GNMA to harm Plaintiff, actual communications between Defendant and GNMA regarding the dispute during the same period of time that the threats allegedly were made and evidence suggesting that the termination was out of the ordinary. The absence of admissible evidence regarding GNMA's senior decisionmakers' decision to terminate Plaintiff's license, when viewed alongside evidence in Plaintiff's favor, implicated the credibility of GNMA's testifying witnesses. Defendant erroneously characterizes countervailing evidence as evidence the Court overlooked. Contrary to Defendant's arguments, the Court did not overlook any such evidence, and the fact that Defendant can point to countervailing evidence supports the Court's holding that material facts are in dispute.

WHEREAS, Defendant argues that the Court distinguished this case from *Conte v. Emmons*, 895 F.3d 168 (2d Cir. 2018), on erroneous grounds because the record contains no evidence of an "expressly stated personal interest," and it was actually against Defendant's interest for Plaintiff to lose its license. As the Opinion explained, the alleged threats included, among other things, Defendant's in-house counsel calling Plaintiff's counsel and threatening to put Plaintiff out of business if it did not pay the disputed amount and warning that Defendant had a close relationship with GNMA and that Defendant was meeting with GNMA the next day. While Defendant's alleged threats may not have been specifically referenced the potential termination of Plaintiff's license, the alleged threats show Defendant's explicit intent to harm Plaintiff's business through its relationship with GNMA in order to obtain the disputed funds.

*Noerr-Pennington* **Doctrine**

WHEREAS, the parties dispute whether federal or New York law governs the application and scope of the *Noerr-Pennington* doctrine.

WHEREAS, neither party cites binding caselaw from the New York Court of Appeals or the Second Circuit[1] regarding the scope or application of the doctrine to state law and the extent to which the doctrine shields criminal conduct.

WHEREAS, New York lower courts and district courts in the Second Circuit have recognized an exception to *Noerr-Pennington* immunity for illegal or corrupt conduct. *See, e.g.*, *Louie's Seafood Rest., LLC v. Brown*, 157 N.Y.S.3d 509, 512 (2d Dep't 2021); *Alfred Weissman Real Est., Inc. v. Big V Supermarkets, Inc.*, 707 N.Y.S.2d 647, 644 (2d Dep't 2000); *EDF Renewable Dev., Inc. v. Tritec Real Est. Co., Inc.*, 147 F. Supp. 3d 63, 69 (E.D.N.Y. 2015); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 581 (S.D.N.Y. 2014), *aff'd,* 833 F.3d 74 (2d Cir. 2016); *Douglas v. New York State Adirondack Park Agency*, 895 F. Supp. 2d 321, 364-65 (N.D.N.Y. 2012).

WHEREAS, the Supreme Court's rejection of a conspiracy exception to *Noerr-Pennington* in *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365 (1991), was grounded in its interpretation of the Sherman Act. *See also Astoria Ent., Inc. v. DeBartolo*, 12 So.3d 956, 966 (La. 2009) ("[T]he dicta in *Omni* which suggests that the Court may afford *Noerr-Pennington* protection to illegal actions is not based on First Amendment reasoning, but, rather, is based solely on the Court's analysis of antitrust laws."). Following the Supreme Court's decision in *Omni*, courts have generally recognized this holding and/or used it as a basis to decline to adopt a corruption exception generally for purposes of antitrust immunity. *See, e.g.*, *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 61 (2d Cir. 2010) (noting that "the Supreme

---

[1] Defendants cite *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135, 2000 WL 1508873 (Table), at *1 (2d Cir. Oct. 11, 2000) ("Noerr Pennington immunity is applicable . . . to state-law claims such as fraud and tortious interference."), which is designated as an unpublished opinion.

Court has since foreclosed this argument by holding that there is no such <u>conspiracy</u> exception" in discussing antitrust liability (emphasis added)); *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp.*, 185 F.3d 154, 162 (3d Cir. 1999) (relying on *Omni* to conclude that liability under the Sherman Act "is precluded even where it is alleged that a private party urging the action did so by bribery, deceit, or other wrongful conduct that may have affected the decision making process."). In *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011), for instance, the court declined to adopt a corruption or bribery exception to the New Mexico Antitrust Act, which is "patterned after the federal Sherman Antitrust Act . . . [and] construed in harmony with judicial interpretations of the federal antitrust laws." *Id.* at 894-95. In doing so, the court acknowledged that it was "apply[ing] *Noerr-Pennington* only within the antitrust context" and did not need to decide the issue of whether *Noerr-Pennington* immunity applied to state-law claims not based on antitrust theories. *Id.* at 900.

WHEREAS, regardless of *Noerr-Pennington*'s applicability, the First Amendment does not protect "speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *see also United States v. Halloran*, 821 F.3d 321, 340 (2d Cir. 2016) (clarifying that in *Citizens United,* the Supreme Court "did not hold that the First Amendment protects bribery . . ."); *see also Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 389 (S.D.N.Y. 2018) ("[T]he bribery and other corruption . . . removed any shield that the First Amendment otherwise would have provided." (internal quotation marks omitted)).

WHEREAS, Defendant argues that, to the extent New York law applies and recognizes a corruption exception, the criminal conduct must be directed at the government. Defendant cites *Weissman* as the governing authority for New York law, where the Second Department held that

7

the corruption exception was inapplicable because the plaintiff "did not allege that the defendants participated in illegal, criminal activity directed at a government authority." *Weissman*, 707 N.Y.S.2d at 654-55.  In making this finding, it appears that the court found the exception inapplicable because the alleged conduct was not alleged to have been illegal or criminal, rather than because the conduct was not alleged to have been *directed at a government authority*.  In *Weissman*, the defendants disseminated disparaging and misleading information about plaintiff and his proposed project and submitted letters to municipal authorities raising concerns about the proposed project.  There was no allegation of bribery or other criminal conduct.  Here, circumstantial evidence could support an inference of bribery of a GNMA employee, which is criminal conduct directed at the government.

WHEREAS, for the reasons stated in the Opinion, factual questions regarding Defendant's conduct that would not be protected under First Amendment principles and/or the *Noerr-Pennington* doctrine preclude summary judgment.

**Leave to Amend**

WHEREAS, Count II of the FAC asserted a claim of tortious interference with existing and prospective business relations, premised on Defendant's alleged interference with Plaintiff's relations with third parties other than GNMA.

WHEREAS, the Opinion and Order dated September 3, 2020, granted Defendant's motion to dismiss the tortious interference with existing and prospective business relations claim, thereby making the tortious interference with contract claim the sole surviving claim.

WHEREAS, by Order dated March 30, 2022, the parties were directed to file separate letters stating why the First Amended Complaint ("FAC") should not be amended to reinstate a

cause of action for tortious interference with existing business relations with respect to Plaintiff's relationship with GNMA.

WHEREAS, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[D]istrict courts may deny leave to amend 'for good reason, including futility, undue delay, or undue prejudice to the opposing party.'" *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).

WHEREAS, Defendant opposes amendment on the grounds that a tortious interference with business relations claim is duplicative of the tortious interference with contract claim and is not recognized as a separate cause of action under New York law. Defendant is correct that a plaintiff may not recover on both claims, but the claims may be pleaded in the alternative. Tortious interference with business relations is "also known as tortious interference with prospective economic advantage . . . under New York law." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015). The New York Court of Appeals has "recognized that inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004); *see also 684 E. 222nd Realty Co., LLC v. Sheehan*, 128 N.Y.S.3d 273, 275 (2d Dep't 2020) (reciting the elements for a tortious interference with business relations claim). Unlike tortious interference with contract, tortious interference with business relations does not require the existence or breach of a contract. *Id.* As the Opinion explained, factual issues surrounding the breach must be resolved by the jury. Accordingly, the tortious interference with existing and prospective business relations claim may proceed as an alternative claim, should the jury find that there was no breach of contract. *See, e.g., In re MF*

9

*Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 187 (S.D.N.Y. 2014); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 535-36 (S.D.N.Y. 2002).

WHEREAS, Defendant will not be prejudiced by the addition of the tortious interference with business relations claim because many of the elements between the tortious interference with contract claim and tortious interference with business relations claim overlap, and no additional discovery is needed.  It is hereby

**ORDERED** that Defendant's motion for reconsideration is **DENIED**.  It is further

**ORDERED** that Plaintiff's motion for leave to amend the FAC to plead a tortious interference with business relations claim is **GRANTED**.  By September 13, 2022, Plaintiff shall file a Proposed Second Amended Complaint.

The Clerk of Court is respectfully directed to close the motion at Docket No. 225.

Dated:  September 6, 2022
          New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE